IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CANAL ELECTRIC COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 04-0035C** |
| **UNITED STATES OF AMERICA,** | ) | **(Judge Hodges)** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CANAL ELECTRIC COMPANY'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1**

Date: December 27, 2004

Richard J. Conway
Dickstein Shapiro Morin
& Oshinsky LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Canal Electric Company*

Of Counsel:

David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

Timothy N. Cronin
Assistant General Counsel
NSTAR Electric & Gas
Corporation
800 Boylston Street
Mail Stop P1701
Boston, MA 02199-0228

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED ........ 4

II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN CANAL'S AND FPLE'S CASES ........ 7

III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED ........ 13

IV. CANAL WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION ........ 14

CONCLUSION ........ 16

## TABLE OF AUTHORITIES

Page

Cases:

*Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001) ..................... 7

*Applegate v. United States*, 35 Fed. Cl. 406 (1996) .......................................................... 12-13

*Boston Edison v. United States*, No. 99-447C (Fed. Cl. filed July 12, 1999) ........................... 10

*Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y.), *aff'd*, 857 F.2d 1461 (2d Cir. 1987) ....................................................................... 6

*Commonwealth Edison v. United States*, 56 Fed Cl. 652 (2003) ................................................ 10

*Cont'l Bank & Trust Co. v. Ols. E. D. Platzer*, 304 F. Supp. 228 (S.D. Tex. 1969) .................... 6

*Creppel v. United States*, 33 Fed. Cl. 590 (1995) ...................................................................... 13

*Entergy Nuclear Indian Point 2 v. United States*, 62 Fed. Cl. 798 (Cl. Ct. 2004) ..................... 12

*Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992) .............................................................. 9, 10

*Harris v. L&L Wings, Inc.*, 132 F.3d 978 (4th Cir. 1997) .......................................................... 7

*Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D. Mich. 1985) ............................................. 5

*Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) ....................................................................................... 14

*Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993) ............................................................... 6

*Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) ................. 10

*Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976) ................................................................... 5

*N. States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ..................................... 10

*Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436 (E.D. Wis. 1972) ........... 5

*Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887 (Ct. Cl. 1955) ................ 4, 12

*Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001) ...................................................... 10

*S. Nuclear Elec. Co. v. United States*, No. 98-614C (Fed Cl. filed Apr. 7, 2004) ...................... 10

*Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) ........................................................................ 5

*TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) ............................................. 14

*United States v. Dow*, 357 U.S. 17 (1958) ................................................................................ 12

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 26, 2003) ............ 10

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2003) .... 2, 8, 13

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) ............. 2

Statutes:

Assignment of Claims Act, 31 U.S.C. § 3727 ....................................................................... 9, 13

Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* ......................................... *passim*

Page

Rules:

Rule 40.2(a)(3) ........................................................................................................1

Rule 42(a) ........................................................................................................5

Other Authorities:

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383 (1995) ........................................................................6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CANAL ELECTRIC COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 04-0035C** |
| **UNITED STATES OF AMERICA,** | ) | **(Judge Hodges)** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CANAL ELECTRIC COMPANY'S RESPONSE**
**TO DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE**
**IN ACCORDANCE WITH RCFC 40.2(A)(3) AND 42.1**

## INTRODUCTION

Plaintiff Canal Electric Company ("Canal"), by its undersigned counsel, hereby submits its Response to Defendant's Motion to Transfer and Consolidate (the "Government's Motion").[1] As the earlier-filed of the two cases cited by the Government, Canal does not take a position with respect to the Government's Motion to Transfer *FPL Energy Seabrook, LLC v. United States*, No. 04-88C (Fed. Cl. filed Jan. 23, 2004), currently before Chief Judge Damich, to this Court.

Canal, however, strenuously opposes the Government's efforts to consolidate this case with FPL Energy Seabrook, LLC's ("FPLE") case.[2] Both this case and FPLE's

---

[1] Contrary to the Government's contentions at page one of the Government's Motion, Canal's Notice of Related Case was properly filed with this Court and in a manner and format consistent with a number of spent nuclear fuel ("SNF") plaintiffs. *See*, *e.g.*, *Niagara Mohawk Power Corp. v. United States*, No. 04-0125C (Fed. Cl. filed Jan. 29, 2004); *Constellation Generation Group, LLC v. United States*, 04-0068C (Fed. Cl. filed Jan. 22, 2004); *Niagara Mohawk Power Corp. v. United States*, 04-0124C (Fed. Cl. filed Jan. 29, 2004). In that regard, Canal disagrees with the characterization made in the Government's Motion and in the Government's own Notice of Related Case.

[2] This Response is being concurrently filed with Chief Judge Damich in FPLE pursuant to RCFC 40.2(a)(3).

case are among the more than sixty cases currently pending in this Court arising from the Department of Energy's ("DOE") complete failure to comply with the requirements of the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* ("NWPA" or the "Act"), and related contracts, to commence disposal of SNF by January 31, 1998 from more than 100 nuclear electric power plants. Although the Government has sought SNF case consolidation over the objection of numerous plaintiffs in more than twenty of these cases, none of these requests have been granted.

This Court has on multiple occasions rejected the Government's arguments to stay, consolidate, or coordinate treatment of SNF cases.[3] In the particular instance of these two cases, the legal issues involved could not be more different, and the factual issues could not be more distinct. Far from conserving judicial resources or promoting the efficient administration of justice, consolidation of the cases would have exactly the opposite effect. Consolidation would force Canal to litigate issues that have nothing to do with the merits of its case, issues that are much more complex, issues that are dependent on events that have not yet occurred and may not occur for years to come (if ever), and issues that will take much longer to litigate at much greater expense to Canal. The fair and efficient administration of justice clearly supports allowing the Canal and FPLE matters to proceed on independent and unconsolidated tracks. Accordingly, Canal respectfully requests that the Court deny the Government's Motion.

## BACKGROUND

The NWPA obligated DOE to enter into a Standard Contract with each of the nation's commercial nuclear power plant owners, including Canal, which was an owner

---

[3] *See, e.g., Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004); *Entergy Nuclear Indian Point 2, LLC v. United States*, No 03-2622C (Fed. Cl. filed Nov. 4, 2004).

of the Seabrook Nuclear Power Station ("Seabrook") prior to the sale of its interest therein on April 13, 2002. The Standard Contract requires DOE to commence the acceptance and permanent disposal of SNF from these nuclear facilities by January 31, 1998, in return for payments of substantial fees by the owners into a Nuclear Waste Fund created by the NWPA. When the Standard Contract was executed on June 27, 1986, Canal owned a 3.52% interest in Seabrook. Further, the Standard Contract for Seabrook specifically identifies Canal as an owner of Seabrook, on whose behalf and benefit, along with fifteen other named co-owners, the Standard Contract was entered into with the Government.

Despite collecting in excess of $19 *billion* directly and through earned interest from the nation's nuclear utilities, and more than $3.4 million from Canal alone, DOE did not commence SNF disposal by the statutory deadline mandated by the NWPA, and to this day is unable to say when if ever such disposal will actually begin. On November 1, 2002, almost four years after DOE repudiated its SNF disposal obligations, Canal sold its interests in Seabrook to FPLE. As part of the sales transaction for Seabrook, Canal executed a purchase and sale agreement and assigned its interests in the Standard Contract to FPLE.

As a direct and proximate result of DOE's failure to perform its statutory and contractual obligations, Canal suffered significant damages. These damages fall into the following general categories. First, Canal suffered significant diminution in the value of (i) Canal's Standard Contract (in which it had already invested more than $3.4 million), and (ii) the Seabrook nuclear assets with which the contract was inextricably linked, causing Canal to realize significantly less value in the sale of Seabrook than would have been the case had DOE met its obligations under the NWPA and the

Standard Contract. Additionally, as a result of DOE's unconstitutional taking and breach of the Standard Contract, Canal suffered damages relating to DOE's unauthorized and unlawful fee collection practices occurring prior to the sale of Seabrook.

Canal has pled an unconstitutional taking of its property occurring on January 31, 1998, the date on which the Government failed to meet its obligations under the NWPA and the Standard Contract and, to the extent that its pre-sale breach of contract claims could not be transferred as discussed *infra*, for breach damages incurred up to the date of sale. These claims can be readily measured by the difference between the value Canal received when it assigned its Standard Contract and other nuclear assets versus what it would have received had DOE not breached the Standard Contract and not otherwise violated the express obligations contained in the NWPA. FPLE, on the other hand, seeks to recover for future costs because of the Government's ongoing breach of the contract.[4]

## ARGUMENT

### I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED

In SNF cases, requests by the Government for consolidation, stays, and coordinated treatment have been consistently denied due to the individual circumstances of each particular plaintiff – specifically, what a plaintiff's ongoing plans are for dealing with the problems wrought by DOE's failure to comply with the Act or

[4] While FPLE has brought a takings claim, only the owner of property at the time of a taking may bring a Fifth Amendment takings claim. *See e.g., Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887, 890 (Ct. Cl. 1955). Canal was indisputably a Seabrook owner at the time the Government failed to begin SNF disposal on January 31, 1998, and only Canal can bring this claim based on the events occurring on January 31, 1998.

its Standard Contracts. In the particular instance of the Canal and FPLE claims, however, and as discussed in more detail in Section II, *infra*, the dissimilarities between these two parties are more distinct, numerous, and significant than most other SNF cases. This is because Canal's damages are fixed and, depending on the legal theory involved, can be determined as of the dates of the Government's acts complained of, and/or the date in 2002 when its Standard Contract losses and damages were liquidated. FPLE's claims, on the other hand, are more in line with those in other SNF cases brought by current nuclear plant owner/operators saddled with ongoing SNF custody and management responsibilities.

When applying Rule 42(a) to particular cases, a threshold inquiry is whether common questions of law or fact exist that warrant consolidation of the actions. *See Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460 (E.D. Mich. 1985) (where court denied defendant's motion to consolidate because cases involved predominantly individual issues). The Government's Motion advances no factual basis for concluding that Canal's takings or breach claims have similarity with FPLE's claims such that consolidation is warranted.

When cases involve some common issues, but individual legal and/or factual issues predominate, consolidation should also be denied. *See Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978) (court denied motions for consolidation because parties sought different types of damages); *see also Molever v. Levenson*, 539 F.2d 996, 1003 (4th Cir. 1976) (court reversed lower court's decision to consolidate because claims stated four separate causes of action). Consolidation is neither justified nor required simply because the actions include some common questions of fact or law. *See Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) (denying

defendant's motion for consolidation, court writes: "[T]he fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'"); *see also Cont'l Bank & Trust Co. v. Ol s. E. D. Platzer*, 304 F. Supp. 228, 229 (S.D. Tex. 1969) (holding mere presence of a common question of law or fact does not require consolidation); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383, at 439-40 (1995) (same).

The Government has failed to put forward any rational basis for consolidation of the present cases. Indeed, the factual and legal distinctions between Canal's and FPLE's cases vastly outweigh any alleged similarities. The cases cited in the Government's Motion speak only to consolidation in instances where substantially identical facts are involved. *See* Government's Motion at 4. They do not shed light on why cases with as few substantive legal or factual similarities as those of Canal and FPLE should be consolidated. For instance, while the courts in *Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993), and *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y.), *aff'd*, 857 F.2d 1461 (2d Cir. 1987), ultimately granted consolidation, both of those cases involved claimants asserting entitlement to the same physical property and factual issues that were found to be "identical."

*Karuk* and *Cable Belt* are clearly not germane to the claims of Canal and FPLE since: (1) the Government's failure to commence SNF disposal is not disputed; (2) the elements of damages as sought by Canal and FPLE are clearly distinguishable, as to both substance and time, from one another; (3) the Government's standard rate of acceptance-type defenses may or may not pertain to one case [FPLE's], but certainly not to Canal's; and (4) there are no competing claims for the same or finite dollars in the

Judgment Fund. For all of these reasons, Canal's claims are both legally and factually distinct from those of FPLE.

The Government also cites *Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001), and *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 981 n.2 (4th Cir. 1997), for the proposition that consolidation is appropriate when two plaintiffs sue the same defendant. Government's Motion at 4. These cases in fact articulate much different rationales. The court in *Allfirst* consolidated the cases only after finding that the suits were "mirror image[s]" of one another. 178 F. Supp. 2d at 520. Similarly, the Fourth Circuit in *Harris* held that consolidation was proper only after confirming that the actions were "brought against the same defendant, relying on the same witnesses, alleging the same misconduct, and answered with the same defenses." 132 F.3d at 982 n.2.

*Allfirst* and *Harris* do not begin to resemble the situation here. Because they are legally and factually distinct, the Canal and FPLE cases necessarily involve different witnesses, different defenses, and the status of a failed long-term Government obligation in entirely different time frames. Once again, even if this Court were to find some factual similarities between these two cases, they are not sufficiently similar to warrant consolidation. Indeed, taken to its logical conclusion, the Government's arguments would require the consolidation of *every* SNF case being heard by the Court, a request that has been consistently and repeatedly rejected as being inconsistent with the fair and efficient administration of justice.

## II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN CANAL'S AND FPLE'S CASES

While the Standard Contracts in all the SNF cases are virtually identical, this fact alone does not support consolidation. Indeed, if it did, the Government would have

been successful in its multiple failed attempts to consolidate all SNF cases.[5] A compelling rationale weighing against consolidation is the absolute distinction between the damages (and the proofs required thereof) being sought by a seller of a nuclear facility (such as Canal), whose damages are clearly known and measurable as of the date of sale, and those being sought by a buyer (such as FPLE) whose measure of damages is based on events that will not occur until some time after the date of sale. Further, cases involving the same nuclear facility necessarily become quite different over different time periods due to such complex factors as the changing circumstances of DOE's communications with Standard Contract holders, the status of its waste program, court rulings as to permissible uses of the Nuclear Waste Fund, the Nuclear Regulatory Commission licensing status of the nuclear facility, and the remaining space available in the nuclear facility's spent fuel pool.

To the extent that any similarities exist among SNF claimants, it is due to the fact that the consequences of DOE's delays in commencing SNF disposal have occurred "horizontally" by year, rather than "vertically" by plant. This dynamic of the SNF cases is evidenced by one of the central features of the DOE's nuclear waste program, namely that Standard Contract holders with established SNF disposal rights in a particular year for SNF from their facility's nuclear reactor would have the economic opportunity to exchange queue positions for disposal rights for significant value with other contract holders in a more exigent SNF disposal situation. Thus, the impact of the Government's failure to remove SNF by January 31, 1998 as required by the NWPA and the Standard

[5] Chief Judge Damich has already denied consolidation of SNF cases based on the rationale that the Government intends to raise the same defenses in different cases, rejecting the Government's argument that multiple proceedings create a potential for variant rulings. *See, e.g., Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004).

Contract necessarily had different impacts on individual owners at different periods of time for each affected nuclear facility. This is certainly the case with respect to Canal's and FPLE's claims as they relate to Seabrook. As such, it follows that consolidation is inappropriate in this case.

Indeed, the Government itself has argued that distinct legal and factual issues separate a seller's claim from a buyer's claim. *See* Reply to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment on Liability, *Entergy Nuclear Generation Co. v. United States*, No. 03-2626C (Fed. Cl. filed Nov. 4, 2004); Response in Opposition to Plaintiff's Motion to Substitute Plaintiff and Amend Caption, for Substitution of Counsel, and for Limited Relief from Stay, *Rochester Gas & Elec. Corp. v. United States*, No. 04-118C (Fed. Cl. filed Sept. 22, 2004 ). In *Entergy*, the Government argued that the seller (Boston Edison) was barred *as a matter of law* from assigning its claims under the Standard Contract, and that pre-assignment claims remained with the assignor despite any assignment language in the transactional sale documents and the intent of the parties. Thus, according to the Government, the buyer (Entergy in that case; FPLE here) may not, under any circumstances, bring any contract claims that the seller may have had. To support this theory, the Government cites to the Assignment of Claims Act, 31 U.S.C. § 3727, as well as to *Ginsberg v. Austin*, 968 F.2d 1198 (Fed. Cir. 1992), which the Government argues holds that "pre-existing claims are not automatically transferred with the assignment of an executory continuing contract." Government's Motion at 5.[6]

---

[6] On December 9, 2004, Canal made a protective submittal in the form of an Amended Complaint in response to the arguments in its Defendant's Response in Opposition to Plaintiff's Motion to Substitute Plaintiff and Amend Caption, for Substitution of Counsel, and for Limited Relief from Stay ("Defendant's Response") at 15-16, in *Entergy* and *Rochester*.

In short, the Government has argued in *Entergy*[7] that both factual issues (the sale of the plant) and legal issues (the Assignment of Claims Act and *Ginsberg*) completely separate and distinguish a seller's claim from a buyer's claim. As such, the Government cannot credibly assert in this proceeding that Canal and FPLE have legitimate overlapping or duplicative claims.

Furthermore, once the issue of liability is determined – and Canal contends that liability has indeed been determined by both this Court[8] and the Federal Circuit[9] – these cases will deal almost exclusively with damages. As discussed in greater detail below, the damages of FPLE and Canal are so distinct from one another that any effort to consolidate the two cases would merely confuse these critical distinctions.

Pursuant to its Amended Complaint, Canal seeks recovery of damages for breaches and takings occurring prior to the assignment of its Standard Contract rights and other nuclear assets, while FPLE's damages occur from and after the date of assignment. As Judge Lettow recognized in *Boston Edison v. United States*, No. 99-447C (Fed. Cl. filed July 12, 1999), separate parties may assert distinct damages claims based on the Government's continuing breach of the same Standard Contract: "[The selling and purchasing utility] could both rely on the same contract as a basis for damage claims, just for different periods. I think that's what they're trying to do." *See* Hearing Transcript, dated Mar. 16, 2004, at 27, attached hereto as Exhibit 1.

---

[7] As stated in the footnote above, the Government has made the same *Ginsberg*-related argument in *Rochester*. *See* Defendant's Response at 15-16.

[8] *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 26, 2003) (Merow, S.J.) (order finding Government liable for breach); *S. Nuclear Elec. Co. v. United States*, No. 98-614C (Fed Cl. filed Apr. 7, 2004) (Merow, S.J.) (same).

[9] *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000); *N. States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000); *Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001).

Any common issues between these distinct claims are incidental to the underlying different issues that are fundamental to the Court's ultimate damages determinations. FPLE seeks recovery for future SNF management costs that will be incurred at the Seabrook facility in light of the indeterminate time and circumstances of DOE's future performance. There are no assertions as to these matters in Canal's Complaint. Instead, Canal seeks damages for the injury to its Standard Contract rights and its nuclear enterprise, including lost profits and diminished value, caused by the DOE breach and its fee-collection practices. Since these injuries occurred upon the sale of those assets in 2002, the actual future DOE performance at the core of FPLE's case is simply not relevant to Canal.

As a seller of a nuclear facility, Canal's damages are readily ascertainable as of the closing date of the sales transaction. Canal's breach damages include a claim for diminished value that is generally the difference between the value Canal received when it assigned its Standard Contract and its other nuclear assets, as distinguished from what it would have received had the DOE adhered to its statutory and contractual obligations. By contrast, FPLE, as the current owner of Seabrook, is necessarily dealing with ongoing issues linked to DOE's actual future performance, its future mitigation costs, and associated damages resulting from DOE's breach.

Because Canal is a post-default assignor of Standard Contract rights, as opposed to an existing contract holder, its case will involve different proofs than FPLE's case.[10]

[10] Canal is unaware of any relevance that the rate of acceptance issue, as raised by the Government in FPLE's case, will have on Canal's theories of liability or damages. As the rate of acceptance is not relevant to Canal's claim of lost contract rights and diminished value, there is no basis to conclude that the Canal and FPLE cases are substantially similar, or that their outcomes would result in inconsistent rulings by the Court. In fact, there is nothing intrinsically conflicting or duplicative about allocation of pre-sale and post-sale damages between a buyer and a seller in the context of a continuing failure to perform, since the two claims are temporally distinct.

Since Canal divested its nuclear assets, it is not concerned with (and does not seek damages based upon) DOE's actual future performance and the attendant rate of acceptance issues. Thus, the resources being allocated by the Government to the rate of acceptance issues in FPLE's case (and most of the other SNF cases) will not need to be diverted to, or duplicated in Canal's case, because those issues are not relevant to Canal's liability or damages theories. Since such allegations are absent from FPLE's case, Canal's damages theories cannot be viewed as common, let alone similar enough to warrant consolidation.

There also need not be any concern as to an overlap between the two cases concerning the issue of Greater than Class C Waste ("GTCC"). This, like the issue of rate of acceptance, is irrelevant because Canal does not claim damages for GTCC. To Canal's knowledge, there will be no common witnesses proffered by Canal and FPLE. There has been no mention of GTCC in Canal's pleadings to date, and there will be none in the future.

Moreover, Canal's takings claim provides an additional, unique reason to reject consolidation. To establish a prohibited taking, a claimant must demonstrate that it was the owner of property and that some portion of the property was taken for a public purpose. *Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887, 890 (Ct. Cl. 1955). Further, Canal, as the owner of the property at the time of the taking, retained as a matter of law the right to bring a claim for an uncompensated taking in violation of the Fifth Amendment to the Constitution. *Id.* (to establish prohibited taking, claimant must demonstrate that it was owner of property and that some portion of property was taken for public purpose); *see also United States v. Dow*, 357 U.S. 17, 20 (1958) (Assignment of Claims Act prohibits voluntary transfer of takings claims); *Applegate v.*

*United States*, 35 Fed. Cl. 406, 419 (1996) (same); *Creppel v. United States*, 33 Fed. Cl. 590, 599-600 (1995) (same). In short, these claims are personal to Canal and not transferable. 31 U.S.C. § 3727. As such, there are no "overlapping" or "common" issues between the claims being asserted by Canal and FPLE.

## III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED

Chief Judge Damich has already denied consolidation of SNF cases based on the rationale that the Government intends to raise the same defenses in different cases, rejecting the Government's argument that multiple proceedings create a potential for variant rulings. *See, e.g., Yankee Atomic Elec. Co. v United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004). Further, perhaps the most recent opinion on consolidation was Judge Lettow's November 4, 2004 decision in *Entergy Nuclear Indian Point 2 LLC v. United States*, 62 Fed. Cl. 798 (2004). Similar to this case, the two cases before Judge Lettow for consolidation involved claims brought by two plaintiffs, the buyer and seller in one transaction involving the same nuclear facility. On the issue of consolidation, Judge Lettow held that consolidation should be denied due to, among other factors, the risk of prejudice by the delays that would result from consolidation. *Id.* at 803. Although the Government has sought consolidation over the objection of SNF plaintiffs in more than twenty of these cases, none of these requests have been granted.[11] The fair

[11] Order on Motion for Miscellaneous Relief, filed on Jan. 30, 2004 in: Yankee Atomic v. *United States*, No. 98-0126J; *Connecticut Yankee v. United States*, No. 98-0154J; *Maine Yankee Atomic v. United States*, No. 98-0474J; *Florida Power v. United States*, No. 98-0483; *Northern States v. United States*, No. 98-0484; *Duke Power v. United States*, No. 98-0485; *Indiana Michigan v. United States*, No. 98-0486R; *Sacramento Municipal v. United States*, No. 98-0488S; *Southern Nuclear v. United States*, No. 98-0614J; *Commonwealth Edison v. United States*, No. 98-0621E; *Boston Edison Co. v. United States*, No. 99-0447C; *GPU Nuclear, Inc. v. United States*, No. 00-0440C; *Wisconsin Electric v. United States*, No. 00-0697J; *Power Authority v. United States*, No. 00-0703E; *Omaha Public Power v. United States*, No. 01-0115L; *Nebraska Public v. United States*, No. 01-0116D; *Tennessee Valley v. United States*, No 01-0249C; *PSEG Nuclear, L.L.C. v. United States*, No. 01-0551D; *Vermont Yankee*

and efficient administration of justice requires that the Canal and FPLE cases also proceed independently.

## IV. CANAL WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION

Beyond the lack of legal justification for consolidating Canal's and FPLE's claims, consolidation would cause extreme prejudice to Canal's attempts to seek redress from the Government. Consolidating the cases would severely disadvantage Canal by placing it in the queue behind numerous other SNF cases, and holding Canal's case hostage until the final resolution of myriad forward-looking issues that do not relate to or form the basis for its claims.

Consolidation would thus make the resolution of Canal's claims beholden to the timetable of more than sixty other SNF cases, including FPLE's case. Canal's discovery and claims are historically based and set as of 2002, whereas the vast majority of other SNF cases are necessarily forward-looking, deal with more complex legal issues, and require evidence regarding DOE's future actions.

Two of the SNF decisions that have been issued to date portray just how perplexing and difficult from a case management perspective these forward-looking issues surrounding the Government's future SNF performance will be. While varying in their specific provisions, both *Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) (Hodges, J.), and *TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) (Lettow, J.), specifically contemplate prolonged litigation potentially lasting for *decades*. Under both decisions, the Standard Contract holders' cases will be

---

*v. United States*, 02-0898R; *Detroit Edison v. United States*, NO 02-0926M; *Consumers Energy v. United States*, No. 02-1894E; Order on Motion to Reassign, filed Nov. 4, 2004 in *Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C; Order to Reassign, filed Nov. 4, 2004 in *Consolidated Edison Co. of New York, Inc. v. United States*, No. 04-0033C.

held open pending proof that future specific costs are incurred and demonstrations of causation, and their linkage with the then-current status of the DOE repository program. These seemingly endless judicial revisitations of SNF status will presumably continue until all SNF has left each plaintiff's nuclear facility sites. While such arrangements might be suitable for plaintiffs who are continuing to contend with ongoing SNF management, it would be wholly inappropriate to require a claimant whose damages were incurred years ago (and are no longer continuing) to await such an indeterminate and interminable fate.

Canal's case, in stark contrast, presents straight-forward factual issues and will not require a large amount of discovery. As such, it will be ready to go to trial much sooner than other SNF cases. However, were the cases to be consolidated, Canal would instead be forced to participate while unrelated issues are litigated, as discussed *supra*, incurring additional legal fees and the consequences of interminable delays. For example, Canal would be required to review voluminous documents, participate in the taking and defending of depositions, and otherwise address issues that are of little to no relevance to Canal's liability and damages cases. Because Canal is not entitled to pre-judgment interest on its breach claim, every day of delay – made that much longer through consolidation – could become a windfall to the Government and a compounding of the injuries Canal has sustained as a result of the Government's actions and inactions. Accordingly, consolidation is inappropriate in this case and the Government's Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Canal respectfully requests that the Court deny the Government's Motion to Consolidate Canal's and FPLE's cases.

Date: December 27, 2004

Respectfully submitted,

By: /s/ Richard J. Conway

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Canal Electric Company*

Of Counsel:

David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

Timothy N. Cronin
Assistant General Counsel
NSTAR Electric & Gas
Corporation
800 Boylston Street
Mail Stop P1701
Boston, MA 02199-0228

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that, on December 27, 2004, a copy of the foregoing "Canal Electric Company's Response to Defendant's Motion to Transfer and Consolidate in Accordance with RCFC 40.2(A)(3) and 42.1" was filed electronically. I understand that the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Canal Electric Company*