IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CANAL ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | ) | No.04–0035C<br>(Judge Hodges) |

DEFENDANT'S RESPONSE TO THE COURT'S FEBRUARY 3, 2005, ORDER

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 23, 2005

TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. Plaintiff claims a taking for the diminished value of its property. That is, the purchaser paid a discounted value for plaintiff's property because of defendant's breach. We ask that plaintiff identify and describe the property right claimed to have been taken. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Canal Has Failed To Identify Any Property Right Outside Of The Standard Contract To Have Its SNF Removed Beginning January 31, 1998, Or At Any Particular Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. The Case Law That Canal Cites In Response To The Court's First Question Is Unrelated To Any Taking Of Canal's Property "Right" To SNF Acceptance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. Typically, the United States receives property when it pays just compensation – for example, an easement. What would the Government receive in this case? Explain the nature of the taking alleged. Physical? Regulatory? Temporary? Permanent? Inverse? Categorical? Include the basis for such allegations. For example, if plaintiff alleges a regulatory taking, identify the applicable regulation. If plaintiff alleges a physical taking, describe the invasion alleged. . . . . . . . . . . . 8

A. Canal Cannot Maintain A Claim Based Upon An Alleged Physical Taking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. There Has Been No Regulatory Taking Of Canal's Property Rights . . . . 13

3. Is this a novel takings theory? If not, cite cases that claim takings for a diminished value of property because of a breach of contract. . . . . . . . . . . . . . . . 17

4. Plaintiff limits its takings claim to the diminished value of its property. See Tr. at 28 (Jan. 13, 2005). We understand plaintiff's claim to be that factors such as the payment of fees, storage of SNF, and uncertainty about the future of Seabrook contributed to the diminution of plaintiff's property value. Such factors discussed at the hearing were not alternative takings theories or damage theories. See, e.g. Tr. at 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF CONTENTS (cont'd)

PAGE

5. Plaintiff's claim seems to be that defendant's breach of contract created or resulted in the taking. Takings generally may not result from improper or tortious conduct by the United States. Cite case law to support plaintiff's argument that a breach of contract can give rise to a taking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6. Plaintiff assigned or transferred its contract rights to FPL Energy Seabrook, according to defendant. Canal has filed a "protective" claim for breach of contract, apparently because a challenge to such transfers is pending. What would be the effect of a successful challenge to plaintiff's assignment of its contract claim? Would plaintiff proceed on a breach claim alone? When will this issue be decided? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7. Plaintiff claims standing as a third-party beneficiary. Defendant argues that plaintiff was not an intended beneficiary of the contract. If Canal is a third-party beneficiary, does this resolve the issue of whether it has standing as a minority owner? Plaintiff argues that its position may be distinguished from that of a shareholder by the fact that it had management duties? Does defendant acknowledge that management duties properly distinguish Canal's position here from that of a shareholder with regard to standing? . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

CASES PAGE(S)

Ambase Corp. v. United States, 58 Fed. Cl. 32 (2003) . . . . . . . . . . 14

Allegra Villa v. United States, 60 Fed. Cl. 11 (2004) . . . . . . . . . . 16

Andrus v. Allard, 444 U.S. 51 (1979) . . . . . . . . . . 15

Bass Enterprises Prod. Co. v. United States, 133 F.3d 893 (Fed. Cir. 1998) . . . . . . . . . . 19

Benenson v. United States, 548 F.2d 939 (Ct. Cl. 1977) . . . . . . . . . . 6, 11, 12, 19

Boston Edison Co. v. United States, No. 99-447C, 2005 WL 375603 (Fed. Cl. Feb. 15, 2005) . . . . . . . . . . 6, 7

Branch v. United States, 69 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . 16

Brown v. United States, 3 Cl. Ct. 31 (1983), aff'd, 741 F.2d 1374 (Fed. Cir. 1984) . . . . . . . . . . 4

Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . 20

Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003) . . . . . . . . . . 6, 16, 19

Commonwealth Edison Co. v. United States, 271 F.3d 1327 (Fed. Cir. 2001) . . . . . . . . . . 4

Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003) . . . . . . . . . . 7

Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496 (9th Cir. 1990) . . . . . 11

Detroit Edison Co. v. United States, 56 Fed. Cl. 299 (2003) . . . . . . . . . . 6, 7

Forest Props., Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir.1999) . . . . . . . . . . 9-10

Glosmeyer v. United States, 45 Fed. Cl. 771 (2000) . . . . . . . . . . 10-11

Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060 (Fed. Cir. 2001) . . . . . 21

Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440 (2005) . . . . . . . . . . 6, 15, 16, 19

Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . 5, 10, 12

TABLE OF AUTHORITIES (cont'd)

PAGE(S)

Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004) . . . . . . . . . . . . . . . . . . . . . 9

J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 411 F.2d 1246 (1969) . . . . . . . . . . . . . . . . . . . . 20

Kaiser Aetna v. United States, 444 U.S. 164 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

Kimball Laundry Co. v. United States, 338 U.S. 1 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

La Van v. United States, 382 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982) . . . . . . . . . . . . . 5, 11, 19

Mack v. United States, 225 Ct. Cl. 187, 635 F.2d 828 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

NRG Co. v. United States, 31 Fed. Cl. 659 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . 15

Sacramento Mun. Utility Dist. v. United States, 61 Fed. Cl. 438 (2004) . . . . . . . . . . . . . . . . . 6, 7

Smith v. United States, 58 Fed. Cl. 374 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Southern Nuclear Co. v. United States, No. 98-614C, slip op. (Fed. Cl. Apr. 7, 2004) . . . . . . . . 7

Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . . . . . . . . . . . . . . . . . 21

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302 (2002) . . . . . . . . . . 15

The Stearns Co. Ltd. v. United States, 396 F.3d 1394 (Fed. Cir. 2005) . . . . . . . . . . . . . . . 1, 9, 10

Tuftco Corp. v. United States, 222 Ct. Cl. 277, 614 F.2d 740 (1980) . . . . . . . . . . . . . . . . . . 21-22

Tuthill Ranch, Inc. v. United States, 381 F.3d 1132 (Fed. Cir.2004) . . . . . . . . . . . . . . . . . . . . . 10

Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1 (1997) . . . . . . . . . . . . . . . . . . . . . 20

Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 162 (1980) . . . . . . . . . . . . . . . . 11

United States v. Pewee Coal Co., 341 U.S. 114 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

TABLE OF AUTHORITIES (cont'd)

PAGE(S)

Vaizburd v. United States, 384 F.3d 1278 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Yancey v. United States, 915 F.2d 1534 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 15

Yee v. City of Escondido, 503 U.S. 519 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Yuba Natural Res., Inc. v. United States, 904 F.2d 1577 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . 19

STATUTES

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CANAL ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | ) | No.04–0035C<br>(Judge Hodges) |

**DEFENDANT'S RESPONSE TO THE COURT'S FEBRUARY 3, 2005, ORDER**

Defendant, the United States, respectfully responds to the questions posed by the Court in its order dated February 3, 2005, while replying to the responses of plaintiff, Canal Electric Company ("Canal") to those same questions.

**SUMMARY OF ARGUMENT**

When compared to its opposition to the Government's motion to dismiss, Canal's responses to the Court's seven questions lack any significant new analysis supporting its ability to maintain a takings claim founded upon the Department of Energy's ("DOE") breach of the Standard Contract. Instead, Canal repackages its previous arguments and supporting case law, while ignoring dispositive precedent from the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, including the recent decision in The Stearns Company, Ltd. v. United States, 396 F.3d 1354 (Fed. Cir. 2005), that contradicts Canal's novel physical takings claim. All of its claimed damages are based upon, and dependent upon, DOE's obligation and failure to begin spent nuclear fuel ("SNF") acceptance by January 31, 1998. Although Canal disclaims that the source of this "right" was created by the Standard Contract, Canal has not identified any other source that required DOE to accept any SNF from Canal either at all or by

any particular date. Its assertion that the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, create an obligation upon DOE to accept Canal's SNF is wholly unfounded. On analysis, the allegations underlying Canal's takings claim, and the law applicable to that claim, belie any contention that Canal's takings claim has any merit.

## ARGUMENT

In its order dated February 3, 2005, this Court asked a series of questions to which it requested the parties to respond. Below, we repeat each of the Court's questions, followed by our response.

**1. Plaintiff claims a taking for the diminished value of its property. That is, the purchaser paid a discounted value for plaintiff's property because of defendant's breach. We ask that plaintiff identify and describe the property right claimed to have been taken.**

### A. Canal Has Failed To Identify Any Property Right Outside Of The Standard Contract To Have Its SNF Removed Beginning January 31, 1998, Or At Any Particular Time

Canal's response to this question represents a fundamental shift in the property rights that it allegedly seeks to vindicate in this litigation. In its complaint, and as discussed in the Government's motion to dismiss, Canal alleged a property interest in the Nuclear Waste Policy Act (the "NWPA") and in the Standard Contract. See Complaint at ¶¶ 55-57. Specifically, Canal alleged property interests in the "right to have the DOE dispose of Canal's SNF in a manner and at a cost consistent with the intent of Congress" (id. at ¶ 55) and in the "benefits of the NWPA." Id. at ¶ 57. Based upon these asserted property rights, the Government moved to dismiss Canal's claim upon the grounds that, as a matter of law, Canal lacked a property right in the NWPA and in the Standard Contract and that the Government's breach of contract did not constitute a taking.

In response to this question, which seeks to isolate the property rights at issue here, Canal appears to have abandoned the allegations that it possessed a property interest in the Standard Contract and attempted to minimize its reliance upon the NWPA. Instead, Canal generally identifies property interests in the real property and assets of the Seabrook facility. Canal Response at 2. Yet, for the Court to find a "taking" of any of these interests, the Court must first find that DOE had an obligation to begin removing SNF from that property beginning January 31, 1998, and then determine whether the source of that right to removal constitutes a viable "property right" that can be "taken." Canal alleges a "property interest" in the "property that must be employed to provide storage of the SNF for which the Government was otherwise responsible." Id. Canal further alleges a property interest in "the value of the Seabrook facility as a going concern, i.e., the ability of Canal to use and enjoy the benefit from the Seabrook facility unencumbered by the mounting liabilities associated with interim SNF storage, and the costs and uncertainties of permanent disposal." Id.[1]

While the Government does not dispute for the purposes of the pending motion that Canal, as an minority interest holder in the Seabrook facility, possessed a property interest in Seabrook's assets and real property, Canal continues to obfuscate the property interests that it seeks to vindicate in this litigation. In fact, after briefly summarizing its "property interests," Canal proceeds with a three-page recitation of takings case law with no further discussion of the property rights at issue here. In contrast to Canal's non-responsiveness, the Government responds simply by stating that we do not dispute that Canal possessed a property right in the Seabrook property. Instead, the Government disputes that, as a matter of law, Canal possessed a

[1] Canal also alleges a property interest in the "assets associated with Seabrook." Id.

property right in the NWPA, that Canal possessed a property right outside the Standard Contract to have DOE remove its SNF at any particular point in time, and that DOE's breach of the Standard Contract could constitute a taking of Canal's interests in its real property rather than a simple breach of contract.

It appears that the only basis upon which Canal is relying to establish DOE's obligation to accept Canal's SNF, and to accept that SNF by a date certain, is the NWPA. Yet, the NWPA, in and of itself, cannot create a "property right" requiring DOE to accept and dispose of Canal's SNF. First, as we explained in our prior briefing, the NWPA does not independently obligate DOE to accept any individual utility's SNF, but instead only authorizes DOE to enter into a contract with a utility through which DOE will accept that utility's SNF. See 42 U.S.C. §10222(a)(5). Second, an alleged violation of a statute, which Congress is free to amend at any time, cannot constitute an individual "property right." See, e.g., Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (provision of Energy Policy Act requiring domestic utilities that had entered into contracts with the Government for processing uranium to pay for costs of cleanup of environmentally contaminated uranium processing facilities could not provide basis for a Fifth Amendment taking); Mack v. United States, 225 Ct. Cl. 187, 191, 635 F.2d 828, 832 (1980) (provisions of Veterans' Preference Act "do not create an interest in property subject to being taken for public use"); Brown v. United States, 3 Cl. Ct. 31, 46 (1983) (same), aff'd, 741 F.2d 1374 (Fed. Cir. 1984). To the extent that Canal possesses any claim against the Government, that claim arises from and is defined by the obligations created by the Standard Contract. As we explained in our motion, any breach of the Standard Contract's obligations gives rise, at best, to a breach of contract claim, not a takings claim.

B. The Case Law That Canal Cites In Response To The Court's First Question Is Unrelated To Any Taking Of Canal's Property "Right" To SNF Acceptance

In addition to its failure to clearly segregate its alleged property rights from DOE's breach of contract, the cases Canal cites do not support its takings claim. For example, in Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982), a case that Canal repeatedly cites in its response, the Supreme Court found that the permanent physical occupation of plaintiff's property through the installation of cable cross-over wires constituted a taking. Id. at 427, 434-435. Similarly, in Kaiser Aetna v. United States, 444 U.S. 164 (1979), the Supreme Court found a permanent physical taking based upon the imposition of navigational servitude that resulted in an "actual physical invasion" of a privately owned marina. Id. at 176. Here, Canal does not allege that the Government permanently[2] placed property or allowed third parties to place property upon the Seabrook site. To the contrary, Canal and/or assignees have owned, and continue to own, the SNF at the Seabrook site, given that title to the SNF does not transfer until DOE accepts the SNF, Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1276 (D.C. Cir. 1996), precluding a "physical invasion" argument. Canal also does not allege a federalization of Seabrook's private enterprise, in stark contrast to the facts underlying the takings analyses in United States v. Pewee Coal Co., 341 U.S. 114 (1951), and Kimball Laundry Co. v. United States, 338 U.S. 1 (1949). Moreover, case law analyzing regulatory takings of contracts

[2] Canal alleges that, because it was "forced to sell its interest in Seabrook, the Government's taking was permanent." Canal Response at 8. However, Canal does not allege that the Government "forced" Canal to sell its interest in the Seabrook facility, so the statement is inapposite. Moreover, the Government still must remove the SNF generated during Canal's ownership period based upon the assignment of Canal's rights in the Standard Contract to FPL Energy. At most, any taking would temporary, and not permanent – an issue that would go to the amount and type of damages that Canal could recover.

between private parties does not support Canal's takings claim founded upon a breach of a contract in which the Government was a party and of which Canal was an express intended beneficiary.[3] See Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003) (regulatory taking of contract rights where Government was not party to contract); Huntleigh USA Corp. v. United States, 63 Fed. Cl. 440 (2005) (denying motion to dismiss complaint alleging regulatory taking of contract between private parties to provide airport security).

As it does throughout its brief, and because it cannot apply dispositive precedent from appellate courts to buttress its claim, Canal heavily relies upon recent decisions from this Court that have allowed takings claims to proceed as alternative claims to breach of contract actions in other SNF cases. However, for the reasons set forth herein and in the Government's motion to dismiss and reply, we respectfully disagree with the conclusions of the Court in Sacramento Mun. Utility Dist. v. United States, 61 Fed. Cl. 438 (2004) ("SMUD"), Detroit Edison Co. v. United States, 56 Fed. Cl. 299 (2003), and Boston Edison Co. v. United States, No. 99-447C, 2005 WL 375603 (Fed. Cl. Feb. 15, 2005), which allowed takings claims to proceed as potential alternative claims to the underlying breach of action claims brought by each plaintiff. However, even these cases are distinguishable based upon Canal's allegations in its complaint. For example, Judge Braden, in SMUD, allowed the takings claim to proceed based upon allegations not present here. SMUD did not contend that the Government's failure to perform under the Standard Contract gave rise to a taking. SMUD, 61 Fed. Cl. at 441. Instead, SMUD asserted

---

[3] As will be discussed later, Canal's reliance upon cases arising from regulatory takings is misplaced (see Yancey v. United States, 915 F.2d 1534 (Fed. Cir. 1990); Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003); Huntleigh USA Corp. v. United States, Fed. Cl. 440 (2005); Benenson v. United States, 548 F.2d 939 (Ct. Cl. 1977)), as Canal cannot proceed under a regulatory takings theory.

that the 1987 amendments to the NWPA limited SMUD's contract remedies, thereby potentially constituting a taking. Id. Canal has not alleged that its takings claim is based upon the 1987 amendments – and for good reason – as any takings claim predicated upon the 1987 amendments would be untimely. Similarly, while Detroit Edison allowed the alternative takings claim to proceed, the Court recognized the underlying contractual basis for the plaintiff's claim, finding that to the extent that the plaintiff succeeded upon its breach claim, damages for any alleged taking would be improper. Detroit Edison, 56 Fed. Cl. at 303. Finally, Judge Lettow allowed the plaintiff's takings claim to proceed in Boston Edison upon the grounds that issues of material fact existed concerning the basis for the property right allegedly taken that precluded summary judgment upon that claim, although the Court recognized that both contract and takings claims could not be viable. Boston Edison, 2005 WL 375603, at *19.[4] In any event, in asking this Court to follow these three decisions, Canal impliedly asks this Court to ignore other SNF cases in which the Court dismissed takings claims similar to the claim filed here. See Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2003); Southern Nuclear Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion).

The wealth of takings case law fails to support Canal's takings claim here. While the Government does not dispute for the purposes of this motion a property interest in the Seabrook property and assets, Canal's claim requires a finding of a recognizable property interest in the

---

[4] The Government respectfully disagrees with Judge Lettow's conclusions in Boston Edison. Even if the material facts proposed by the plaintiff in Boston Edison that resulted in the denial of summary judgment were undisputed, applicable precedent demonstrates that a takings claim still would not lie against the Government.

rights and obligations under the Standard Contract. Such rights simply may not be vindicated in a takings action.

**2. Typically, the United States receives property when it pays just compensation – for example, an easement. What would the Government receive in this case? Explain the nature of the taking alleged. Physical? Regulatory? Temporary? Permanent? Inverse? Categorical? Include the basis for such allegations. For example, if plaintiff alleges a regulatory taking, identify the applicable regulation. If plaintiff alleges a physical taking, describe the invasion alleged.**

Canal's response to this question is illustrative of its scattershot approach to this litigation. Since it has no appellate precedent upon which to rely, Canal simply throws as many arguments into its response as possible, while ignoring substantive requests by the Court. In analyzing Canal's response to this question, the following omissions from Canal's complaint are significant:

- Canal does not allege that the Government has federalized Seabrook or otherwise has taken over the nuclear generation function at the Seabrook facility.
- Canal does not allege that the presence of SNF in the Seabrook wet pool has resulted in the shut down of the Seabrook reactor or in the termination of electricity generation by that reactor.[5]
- Canal does not allege that the SNF upon its site was generated by the Government.
- Canal does not allege that the Government has imported SNF from off-site for placement in the Seabrook wet pool, and it does not allege that the Government has forced Seabrook to take title to any SNF not generated by the Seabrook facility.

---

[5] For the Court's information, according to Seabrook's RW-859 filings submitted to DOE, Seabrook's first discharge was not made into its wet pool until 1991. As of the date of sale, Seabrook's wet pool only was half full. No dry storage facility has been built at the Seabrook facility. Although unnecessary to the resolution of the Government's motion, Canal's insinuations that it had to make alternative storage arrangements for its SNF are simply false.

In addition to material allegations omitted from Canal's complaint, the following facts found by this Court in Indiana Michigan cannot be disputed:

- SNF is a by-product of the production of energy using nuclear power. Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 640 (2004).
- Under the Standard Contract, SNF must remain in a utility's wet pool for at least five years prior to transportation to a DOE facility. See Indiana Michigan, 60 Fed. Cl. at 661, n.44.
- Nuclear facilities are designed to store SNF in their wet pools. Id. at 640.

These omitted allegations and undisputed facts demonstrate the tenuous nature of Canal's claim and the inapplicability of the case law that Canal cites in its response.

### A. Canal Cannot Maintain A Claim Based Upon An Alleged Physical Taking

In attempting to provide legal foundation for its physical takings claim, Canal's response ignores the recent decision by the Federal Circuit in The Stearns Co. Ltd. v. United States, 396 F.3d 1394 (Fed. Cir. 2005), that is dispositive of Canal's physical takings claim. In Stearns, the Federal Circuit was confronted with an allegation that a physical taking had occurred based upon the enactment of a regulation that affected the appellee's ability to engage in surface mining. Id. at 1356. The appellee argued that the denial of its "valid existing rights" application ("VER"), which would have allowed it to engage in mining, effected a physical taking because it unilaterally transferred the appellee's surface easement to the United States. Id. at 1357. In overturning the trial court's determination that the denial of the appellee's VER constituted a physical taking of the surface easement, the Federal Circuit reiterated long-standing precedent, noting that a physical taking only occurs "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land.'" Id. (quoting Forest Props.,

Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir.1999), and Yee v. City of Escondido, 503 U.S. 519, 527 (1992)); see Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1135 (Fed. Cir.2004) (explaining that physical takings require physical possession). The Court then found that the Government had neither (1) occupied appellee's mineral property or the accompanying implied appurtenant easement nor (2) required appellee to accept the physical presence of a third party on any of the property. Stearns, 396 F.3d at 1357.

Here, there is no physical occupation by the Government of Canal's property, and the Government has not required Canal to accept the presence of a third party upon its property. Canal does not allege that the Government federalized the Seabrook facility or the generation of nuclear power at that facility. Canal cannot allege that the Government owns the SNF that Seabrook generated. See Indiana Michigan, 88 F.3d at 1276. Canal does not allege that the SNF stored at Seabrook was generated by any entity other than Seabrook. Canal does not allege that the Government has required Seabrook to store SNF generated by other nuclear facilities. Canal merely alleges that it was required to store SNF that it owned and generated in the course of Seabrook's operations, in a wet pool that is designed for the storage of SNF, for a period of time longer than set forth in a contract with DOE. Even if those limited assertions were true, and they are not, they simply do not constitute a physical taking of Canal's property interest.[6]

---

[6] The three cases that Canal cites in footnote number 3 of its response are inapposite. First, neither Vaizburd v. United States, 384 F.3d 1278 (Fed. Cir. 2004), or Glosmeyer v. United States, 45 Fed. Cl. 771 (2000), involved takings with roots in contract obligations. Vaizburd involved a physical occupation of plaintiffs' property that resulted from the Government's deposit of three million cubic yards of sand on Coney Island's beaches. That deposit – and the accretion that followed – resulted in the loss by plaintiff of his submerged seaward lot. Vaizburd, 348 F.3d at 1280. Likewise, Glosmeyer involved the Government's permanent physical occupation of private property for the purposes of turning railway easements into trails. In concluding that a taking occurred, the Court noted that, "[w]hereas previously the plaintiffs could exclude all but

The cases that Canal cites in its response do not support its physical takings claim. Unlike here, where the Government has neither occupied nor allowed a third party to occupy any of the Seabrook facility, Loretto involved the permanent physical placement of cable cross-over wires upon the plaintiff's property. Loretto, 458 U.S. at 427, 434-435. Similarly, Kaiser Aetna involved a permanent physical taking based upon the imposition of a navigational servitude upon a landowner's private pond which allowed the public to travel upon that pond (444 U.S. at 180) while Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 162 (1980), involved the State of Florida's attempt to permanently appropriate interest earned upon a private account at the clerk's office. Unlike here, where there is no allegation that the Government has federalized the production of energy at Seabrook, Peewee Coal Co., 341 U.S. at 115, and Kimball Laundry, 338 U.S. at 3, both of which Canal cites, involved the federalization of private enterprises for public purposes. Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496 (9th Cir. 1990), fails to support a physical taking, as that case involved a regulatory taking based upon restrictions placed upon the development of private property. Id. at 1500.

Finally, Canal's attempt to analogize its claim with the taking at issue in Benenson v. United States, 548 F.2d 939 (Ct. Cl. 1977), ignores obvious – and relevant – differences between the two cases. In Benenson, the Government's actions precluded the property owner from utilizing his property. Canal itself quoted the Benenson Court, which found that "the net effect of the acts of the Government is that plaintiffs cannot use their property for any income-

---

the railroads from use of the right-of-ways, now the public at large has access. This is a physical taking of the plaintiffs' property." Glosmeyer, 45 Fed. Cl. at 781. Second, the Government's action in Yancey in quarantining the plaintiff's healthy turkeys was based upon concerns for public safety. Yancey, 915 F.2d at 1536. Contrary to Canal's assertion, the Court indicated that the Government had received a benefit in return for the destruction of the turkeys. Id. at 1542.

producing purpose." Id. at 947. Here, Canal does not allege that, based upon the presence of SNF in Seabrook's wet pool, the Seabrook facility cannot be used for "any income-producing purpose." In fact, no such allegation could be made. At most, Canal alleges that, at some point in the future, current or future Seabrook owners may be forced to find additional on-site storage for SNF generated by the facility. Yet, even if those allegations were true, Benenson would not apply because Canal does not allege that the purpose of the Seabrook property – the production of nuclear power – would be affected by the continued presence of SNF on-site.[7] In fact, contrary to Canal's indisputably incorrect statement that, had the Government performed, Canal "would not otherwise be required to store SNF at the Seabrook facility" (Canal Response at 8), storage of SNF is a requirement of nuclear power generation. Based upon Canal's failure to identify any appellate opinion that supports the maintenance of its claim here, this Court should follow the applicable precedent and dismiss Canal's physical takings claim.[8]

---

[7] Canal's assertion that it was deprived "of the fair use and enjoyment of Seabrook that must be used for the interim storage of SNF" is incredible. Canal Response at 11. Indeed, Canal has not alleged that, during its ownership period, Seabrook's SNF was stored in any location other than the Seabrook wet pool. Based upon our experience in SNF cases, we are unaware of any "use or enjoyment" that could be made of the wet pool other than the storage of SNF.

[8] The Court also should disregard Canal's assertion that, by its breach of the Standard Contract, "the Government effectively acquired an easement/constructive easement in the Property" for the purpose of SNF storage. Response at 6. Notwithstanding the fact that the underlying question of whether the Government's breach resulted in a physical occupation of the Seabrook property should be resolved against Canal, Canal's assertion of the existence of a "constructive easement" based upon the Government's breach of contract is made without any legal support. As previously explained, Canal or its assignee owns the SNF at Seabrook. See Indiana Michigan, 88 F.3d at 1276. Canal's assertion that Canal's storage of its own SNF somehow involves an easement by DOE is nonsensical. Further, given that any obligation upon DOE to accept Canal's SNF arises only through DOE's contract, a breach of that obligation is a breach, not a taking.

B. There Has Been No Regulatory Taking Of Canal's Property Rights

As an alternative to its physical takings claim, Canal now argues that the "Government's failure to remove SNF from Seabrook on or before January 31, 1998 also amounted to a regulatory taking of Canal's property." Canal Response at 13. Allegations of a regulatory taking simply cannot survive the Government's motion to dismiss. First, though specifically requested by this Court, Canal failed to"identify the applicable regulation" that effected the taking. Canal cannot identify the regulation that effected the taking because no such regulation exists. As set forth unambiguously in Canal's complaint, and as we argued in our motion to dismiss, Canal's takings claim is founded upon the Government's breach of the Standard Contract and not upon the imposition of a regulation that affected either Canal's contract or property rights. Instead of identifying the regulatory instrument that effected the taking, Canal elects to focus upon the alleged rights that were purportedly taken. Canal asserts that its property right to SNF acceptance stems from the NWPA and references favorably Judge Lettow's decision in Boston Edison, in which he found the existence of a dispute regarding a pre-existing Federal responsibility for the ultimate disposal of SNF. However, Canal's regulatory takings claim should be dismissed based upon its failure to identify the regulation that effected the taking and upon its failure to identify any case law that supports a regulatory takings claim founded upon a breach of contract.

Second, since Canal's claim is founded upon its rights in a contract with the Government, Canal has no protected property interest. Since the NWPA did not create a right in a particular utility to SNF acceptance beginning by January 31, 1998, outside the existence of a contract, see 42 U.S.C. § 10222, Canal could not have had a "right" to SNF acceptance by a date certain outside of the Standard Contract. Canal tries to distance itself from the Standard Contract, in

apparent recognition of the legal infirmities associated with such a claim, arguing in favor of a general expectancy that the Government would accept SNF from commercial reactors. However, this Court has recognized that an "investment-backed expectation is not property." Ambase Corp. v. United States, 58 Fed. Cl. 32, 51 (2003). In Ambase, the plaintiff had alleged that, "as the sole shareholder of [the contracting party], it had a reasonable investment-backed expectation that the government would honor the goodwill contracts with [the contracting party], and that the enforcement of FIRREA confiscated that expectation . . . ." Id. at 50. The Court rejected this argument, finding that, because the "right" at issue was created through a contract with the Government, the only remedy was a contract-based remedy by the contract holder:

> In light of these general concepts, the issue in this case is whether an action by the government against the corporation, that destroys the corporation's value, can be the legal cause of the shareholder's loss in value. The answer seems to the Court to depend on what the character of the government action was. If the government's action is legally compensable under some remedial system then the answer appears to be that there is no legal cause that would justify a takings claim. In this case that is clearly the situation. The government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action. Therefore, the takings claim can only exist if there is no remedy other than a takings claim for the government's breach of contract. But clearly there is a contract remedy.

Id. at 52 (emphasis added; citations omitted). The same result should obtain here.

Finally, the Supreme Court has found that, in considering whether a regulatory taking has occurred, courts must look at the totality of the claimant's property rights, not specific segments of those rights:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole--here, the city tax block designated as the "landmark site."

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 327 (2002) (quoting Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 130-131 (1978)). "Where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." Id. (quoting Andrus v. Allard, 444 U.S. 51, 65-66 (1979)). Here, Canal does not allege that the Government has taken the most significant strand from Seabrook's "bundle of property rights" – the ability to operate a nuclear power reactor and generate electricity. Canal does not even allege the "destruction of one strand of the bundle." Instead, Canal alleges that the Government's delay in accepting SNF from commercial nuclear reactors resulted in the storage of certain SNF assemblies for longer than contractually mandated. Under the most basic analysis, Canal's regulatory takings claim must be dismissed.

Finally, it is not surprising that, other than a discussion of Boston Edison, another SNF case, Canal's legal analysis of its regulatory takings claim is circumscribed, at best. With literally hundreds of cases analyzing regulatory takings, Canal relies upon only three easily distinguishable cases. In Yancey v. United States, 915 F.2d 1534 (Fed. Cir. 1991), the quarantine placed upon the plaintiffs' otherwise healthy turkeys by the Government deprived the plaintiffs of their investment-backed expectation that their turkeys could be used for breeding. Id. at 1536. Instead, based upon the regulatory action of the Government, the plaintiffs were required to sell the turkeys for meat at a far lower price. Id. In Huntleigh USA Corp. v. United States, 63 Fed.

Cl. 440 (2005), regulations that were imposed after 9/11 resulted in the federalization of airport security. Plaintiff alleged that these regulations interfered with its private contracts with certain private airports and deprived the plaintiff of the contractual rights that it possessed with third parties. Id. at 442. Moreover, since the case involved private contracts, no contract remedy existed against the Government. Id. at 447-48.[9] Likewise, Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003), involved the implementation of regulations that interfered with the plaintiffs' investment-backed expectations in contracts that it had with third parties. Once again, since the Government was not a party to the contracts, no contract remedy existed, and a regulatory taking was found. Id. at1325; see Allegra Villa v. United States, 60 Fed. Cl. 11, 19 (2004) (explaining rationale of taking in Cienega).

These three cases are easily distinguished. The actions of the Government in each of these cases went to the underlying ability of the plaintiffs to obtain their investment-backed expectations from their property.[10] Here, there is no allegation that the presence of SNF upon the Seabrook site interfered with the production of electricity by Seabrook or that the electricity sold by that facility was sold at a lower price based upon the presence of SNF. Indeed, such an allegation could not be made in good faith. Likewise, both Huntleigh and Cienega Gardens

---

[9] Huntleigh cannot be described as definitive precedent. Indeed, the decision simply rejected the Government's motion to dismiss, allowing the case to be litigated upon the facts. Id. at 451.

[10] The nuclear industry is a heavily regulated industry, subject to a wide variety of regulatory requirements. As the Federal Circuit has observed, "reasonable investment-backed expectations are greatly reduced in a highly regulated field." Branch v. United States, 69 F.3d 1571, 1581 (Fed. Cir. 1995).

involved alleged regulatory takings that affected contract rights between private parties, a fact that renders these decisions inapplicable here.

**3. Is this a novel takings theory? If not, cite cases that claim takings for a diminished value of property because of a breach of contract.**

While Canal denies that its takings theory is novel, that contention is not supported by Canal's complaint or by its briefs filed in this matter. First, to the extent that the claim is based upon the Government's breach of contract – and we have established that it is – Canal has identified no appellate case law supporting the proposition that a takings claim can be premised upon a breach of a contract to which the Government is a party. Likewise, Canal has cited no case law that supports a takings claim for diminished value of property based upon a breach of contract.

Second, to the extent that Canal's claim is based upon the presence of SNF in the Seabrook wet pool, its physical takings theory is novel. To find a taking here, this Court would be required to conclude that the continued presence of SNF in the Seabrook wet pool that was generated by Seabrook in connection with the generation of nuclear power, that is the property of Seabrook and its owners, and that – without the Standard Contract – would remain stored at the Seabrook facility indefinitely constitutes the physical occupation of the Seabrook property by the Government. None of the cases favorably Canal cites supports such a proposition. Canal's allegations support, at most, a breach of contract claim, not a takings claim. Canal should not be allowed to convert a contract action into a novel takings case.

Third, Canal's regulatory takings claim is novel to the extent that the claim is not predicated upon any specific regulatory action that took a pre-existing right. As discussed above,

Canal wholly failed to identify the regulatory action by the Government that effected the taking. This Court, therefore, would be required to find that a regulatory takings claim can proceed without any predicate regulatory action – a novel claim without any legal support.

Finally, even the most tortured reading of the cases that Canal cites fails to support its takings claim. While Canal has repeatedly asserted that Judges Christine Miller and George Miller denied identical motions to dismiss in Delmarva v. United States, No. 04-0034C (Fed. Cl.) and Atlantic City v. United States, No. 04-0036C (Fed. Cl.), the orders attached to Canal's response fail to support that representation. Contrary to Canal's repeated representations, in response to the Government's motion to dismiss, Judge Christine Miller deferred a ruling to allow a renewed motion in response to the plaintiff's amended complaint:

> A ruling on defendant's motion is deferred to defendant's filing a renewed motion addressing all contracts and takings issues. With respect to the latter, defendant may elect to rest on its opening brief, or incorporate parts or all of it by reference, in order to avoid repetition. Plaintiff will have an opportunity to address defendant's arguments relating to a taking.

Order, dated December 3, 2004 (emphasis added). In his order transferring Atlantic City to Judge Christine Miller, Judge George Miller, after determining that Atlantic City and Delmarva are directly-related cases involving the same nuclear reactors and contracts, denied the Government's motion "without prejudice to its renewal before Judge Christine O. C. Miller to whose docket this case is being transferred by separate order." We fail to see anything in either order that constitutes a denial of the Government's motion on the merits as represented by the plaintiff. Based upon the plain language of these two orders, Canal seriously overstates the legal conclusions made – or, as it turns out, not made – by these judges.

The remaining cases that Canal cites for the proposition that its takings theory is not novel demonstrate that Canal's theory is, indeed, novel. Neither of the two cases that implicate contracts, Huntleigh and Cienega Gardens, involve a contract in which the Government is a party. The remaining cases are easily distinguishable and have been discussed at length in this response. See, e.g., Loretto 458 U.S. at 433 (law allowed permanent physical placement of cable companies' equipment upon plaintiffs' property – no third party placement of SNF upon Seabrook's site); Benenson, 548 F.2d at 949 (Government actions in restricting demolition removed all profitable uses from property – no allegation here that presence of SNF generated in nuclear reaction eliminates profitable uses of Seabrook reactor).

**4. Plaintiff limits its takings claim to the diminished value of its property. See Tr. at 28 (Jan. 13, 2005). We understand plaintiff's claim to be that factors such as the payment of fees, storage of SNF, and uncertainty about the future of Seabrook contributed to the diminution of plaintiff's property value. Such factors discussed at the hearing were not alternative takings theories or damage theories. See, e.g. Tr. at 35.**

In its response, Canal affirms that the factors identified by the Court are not alternative takings theories, but, rather, components of the alleged measure of the Government's taking – Canal's diminished value claim. The Government has little to add to this response. However, we reiterate our position that no physical or regulatory taking occurred and that Canal is limited, at best, to a breach of contract action.[11] Moreover, we note that, for a temporary taking, diminished value is not the proper measure of damages. Instead, a plaintiff is limited to the fair rental value of the property. Bass Enterprises Prod. Co. v. United States, 133 F.3d 893, 895 (Fed. Cir. 1998); Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1581 (Fed. Cir. 1990).

[11] The issue of whether Canal has a basis upon which to maintain a contract action is not part of the Government's pending motion and will be addressed in other briefing in this case.

**5. Plaintiff's claim seems to be that defendant's breach of contract created or resulted in the taking. Takings generally may not result from improper or tortious conduct by the United States. Cite case law to support plaintiff's argument that a breach of contract can give rise to a taking.**

In response to this Court's inquiry, Canal fails to identify a single case that supports the maintenance of a takings claim founded upon a breach of contract by the Government. Instead, Canal asserts that its claim is not based upon a breach of the Standard Contract. Canal Response at 19. Acceptance of Canal's representation as true requires the dismissal of Canal's takings claim. Without a breach of the January 31, 1998 commencement date for SNF acceptance contained within the Standard Contract, Canal has identified no other definitive, date-specific right that it possessed requiring the acceptance of its SNF. Canal also has not identified the regulatory action by the Government – outside of the breach – that resulted in any failure or refusal to accept SNF. Assuming that Canal correctly states the basis for its claim, these deficiencies in Canal's allegations are fatal to its claim.

In any event, case law belies the existence of takings claims founded upon breaches of contract by the Government, and the Government refers the Court to our detailed analysis in our briefs filed in connection with the motion to dismiss. Since Canal has not identified any case law that supports a takings claim founded upon a breach of contract by the Government, it is sufficient here to reiterate the well-established rule that, where a party's rights are created by contract, a party cannot state a takings claim founded upon a breach of that contract. Tyler House Apts., Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)); see also La Van v. United States, 382 F.3d 1340, 1351-52 (Fed. Cir. 2004); Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir.

2002); Smith v. United States, 58 Fed. Cl. 374, 389 (2003); Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978). When a party enters into a contract with the Government, it acquires the right, upon breach, to sue for contract damages; however, it acquires no additional property rights and cannot allege a taking under the Fifth Amendment. Plaintiff's takings claim therefore fails as a matter of law.

**6. Plaintiff assigned or transferred its contract rights to FPL Energy Seabrook, according to defendant. Canal has filed a "protective" claim for breach of contract, apparently because a challenge to such transfers is pending. What would be the effect of a successful challenge to plaintiff's assignment of its contract claim? Would plaintiff proceed on a breach claim alone? When will this issue be decided?**

This question implicates several issues that only become relevant if this Court allows Canal's takings claim to proceed. Before addressing those issues, however, we should correct several misnomers perpetuated by Canal's "protective" claim and by its arguments before this Court. Based upon the language of the sales agreement between Canal and FPL Energy, Canal assigned all of its claims arising out of its ownership interests in the Seabrook facility. This assignment is not limited to any breach of contract claims that Canal possessed, but would encompass any takings claim as well. Canal has contended that a takings claim cannot, as a matter of law, be assigned. However, it has provided no case law supporting this conclusion. While the assignment of a takings claim is not frequently litigated, this Court has allowed the assignment of a takings claim where the Government waived the restrictions of the Assignment of Claims act. NRG Co. v. United States, 31 Fed. Cl. 659, 662 (1994). Similarly, the Government can waive the prohibitions against assignment of contract claims. Tuftco Corp. v.

United States, 222 Ct. Cl. 277, 285, 614 F.2d 740, 745 (1980). Further, having purported to assign all of its claims to FPL Energy, without limitation, it appears that Canal would be estopped from arguing the invalidity of that assignment. The issue of Canal's effort to assign its claims to FPL Energy can be more fully explored, when it becomes necessary to brief that issue, through a motion for summary judgment in which the evidence of assignment can be introduced.

**7. Plaintiff claims standing as a third-party beneficiary. Defendant argues that plaintiff was not an intended beneficiary of the contract. If Canal is a third-party beneficiary, does this resolve the issue of whether it has standing as a minority owner? Plaintiff argues that its position may be distinguished from that of a shareholder by the fact that it had management duties? Does defendant acknowledge that management duties properly distinguish Canal's position here from that of a shareholder with regard to standing?**

This issue was raised in the Government's motion to dismiss based upon the failure of Canal to plead that it was specifically named in the Standard Contract as a minority interest holder of the Seabrook facility. Based upon Canal's response to the motion to dismiss and the Government's subsequent investigation, the Government does not dispute, for the purposes of the pending motion, that Canal may be an express third party beneficiary of the Standard Contract. Nevertheless, it is unclear whether, where the primary contract holder that the minority interest owners have designated as their agent under the contract and where that primary contract holder is maintaining its own lawsuit in this Court seeking to recover all damages related to the contract breach, the minority interest owner can maintain its own separate claim. We currently are investigating that issue. While the Government disagrees that standing turns upon management duties, the question of whether management duties somehow distinguish Canal from a shareholder for the purposes of standing now is irrelevant. However, we expect to address Canal's new allegations seeking damages for breach of contract separately.

## CONCLUSION

For the foregoing reasons and those set forth in the Government's briefs in support of its motion to dismiss, we respectfully requests that the Court dismiss the takings claim in plaintiff's complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 23, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March 2005, a copy of foregoing "DEFENDANT'S RESPONSE TO THE COURT'S FEBRUARY 3, 2005, ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John C. Ekman